**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DAVID HUGO JOHNSON,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 10-CV-301-GKF-PJC |
| | ) |
| **MARVIN VAUGHN, Warden,** | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner David Hugo Johnson, a state prisoner appearing *pro se*, filed his petition (Dkt. # 1), together with a brief in support (Dkt. # 2). Respondent filed a response to the petition (Dkt. # 7), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 7, 8, 9). Petitioner filed a reply (Dkt. # 11). Also before the Court is Petitioner's motion for appointment of counsel (Dkt. # 20), filed on March 13, 2013. For the reasons discussed below, the Court concludes the petition for writ of habeas corpus and the motion for appointment of counsel shall be denied.

### *BACKGROUND*

In the early morning hours of January 20, 2008, Petitioner followed Paula Flackes through the parking lot to her apartment located at 10945 East 23rd Street, in Tulsa, Oklahoma. He tried unsuccessfully to follow her through the front door of the apartment. Ms. Flackes locked the door and, when she heard and saw Petitioner coming in through her front window, ran upstairs to check on her teenage daughters, Dawnjare and Destini. Mrs. Flackes screamed at her daughters "to get out," to escape through the balcony door in their bedroom, and then locked herself in the bathroom. Petitioner went upstairs into the daughters' bedroom. He began choking Destini, but Dawnjare grabbed a branch from the balcony outside their bedroom and began swinging it at Petitioner. In the

meantime, Ms. Flackes fled the apartment and began screaming for help. Petitioner ended his assault and ran away. A neighbor called the police who arrived a short time later. Mrs. Flackes described the intruder as "a light-skinned, tall, well-built man, with some type of dread braids, with a brown hoodie, and a black stripe down the side of his arms on his shirt." See Dkt. # 9-2, Tr. Trans. Vol. II at 257.

Soon thereafter, just four blocks away, Griselda Lopez heard a noise coming from the front of her apartment. She saw a man, later identified as Petitioner, climbing in through the front window into her living room. Mrs. Lopez started to scream and the intruder backed out of the window. He did not leave the premises, however, and Mrs. Lopez called the police. Tulsa Police Officer Christopher Scott arrived at the scene. While interviewing Mrs. Lopez, she became excited and pointed out a man standing behind the officer. Officer Scott apprehended Petitioner and Mrs. Lopez identified him as the man who had tried to enter her apartment. Officer Scott then drove Petitioner to the apartments where Mrs. Flackes lived. She also identified Petitioner as the man who had broken into her apartment.

Based on those events, Petitioner was arrested and charged by Information in Tulsa County District Court, Case No. CF-2008-354, with Attempted First Degree Burglary (Count I), and First Degree Burglary (Count II). At the conclusion of a jury trial, held on November 3-5, 2008, the jury found Petitioner guilty as charged and recommended that he be sentenced to three and one-half (3½) years imprisonment for Count I, and to seven (7) years imprisonment for Count II. On December 1, 2008, the judge sentenced Petitioner in accordance with the jury's recommendation, and ordered the sentences to run consecutively. Petitioner was represented at trial by attorney Jill Webb.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA). Represented on appeal by attorney Stuart Southerland, Petitioner raised four (4) propositions of error, as follows:

> Proposition 1: Appellant was prejudiced by the improper joinder of offenses in this case. Trying both the attempted burglary and the burglary counts together violated his right to a fair trial pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, as well as relevant statutory provisions in Oklahoma law.
>
> Proposition 2: Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.
>
> Proposition 3: The State presented improper and irrelevant evidence of an alleged victim's medical condition over defense counsel's objection. The error contributed to a denial of Appellant's right to a fair trial pursuant to the Fifth, Sixth and Fourteenth Amendments.
>
> Proposition 4: The combined error during Appellant's trial served to deny him the right to a fair trial guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(Dkt. # 7, Ex. 1). Petitioner also filed a *pro se* supplemental brief in which he raised the following two (2)[1] additional propositions:

> Proposition 5: Due to a conflict of interest, appellate counsel attempted to persuade Appellant that he had no issues of merit on direct appeal, and deprived Appellant of his Sixth Amendment right under the United States Constitution to an effective, conflict-free appellate counsel.
>
> Proposition 6: Due to a conflict of interest, appellate counsel refused to include a prosecutorial misconduct proposition on direct appeal. With claims of merit omitted, Appellant was deprived his Sixth Amendment right under the United States Constitution to an effective, conflict-free appellate counsel and significant claims of merit on direct appeal.

---

[1] Petitioner identified the two additional direct appeal issues as "Supplemental Proposition One" and "Supplemental Proposition Two." See Dkt. # 7, Ex. 8. The OCCA addressed the claims as Propositions Five and Six. To avoid confusion, this Court has also identified the claims as Propositions Five and Six.

3

(Dkt. # 7, Ex. 8). In an unpublished summary opinion filed January 6, 2010, in Case No. F-2008-1171 (Dkt. # 7, Ex. 3), the OCCA rejected all six claims and affirmed the Judgment and Sentence of the trial court. Nothing in the record suggests that Petitioner sought *certiorari* review by the United States Supreme Court or post-conviction relief in the state courts.

On May 11, 2010, Petitioner filed his federal petition for writ of habeas corpus (Dkt. #1). In his petition, Petitioner identifies the same six (6) grounds for relief that he raised on direct appeal. See Dkt. # 1. In response to the petition, Respondent asserts that Petitioner is not entitled to relief either upon application of the 28 U.S.C. § 2254(d) standards or because the claims are not cognizable in this habeas corpus proceeding. See Dkt. # 7.

*ANALYSIS*

**A.    Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his claims to the OCCA on direct appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.    Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable

4

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As indicated above, Petitioner presented his federal claims challenging his conviction and sentence to the OCCA on direct appeal. The OCCA denied relief. See Dkt. # 7, Ex. 3. Insofar as Petitioner claims violations of the United States Constitution, his claims will be reviewed pursuant to § 2254(d). To the extent Petitioner also claims violations of the Oklahoma Constitution, those claims are denied because they are not cognizable on federal habeas corpus review. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

**1.     Improper joinder of two charges (ground 1)**

In his first ground for relief, Petitioner contends that the joinder of two separate offenses was error because it prejudiced him with the jury (Dkt. # 2 at 8). He argues that trying both the Attempted Burglary and the Burglary counts together violated his right to a fair trial. Petitioner further claims that the jury should have been instructed to keep the counts separate in their considerations. Id. at 6. On direct appeal, the OCCA agreed with Petitioner that joinder was not appropriate in Petitioner's case, and that an instruction should have been given to the jury to evaluate each offense separately (Dkt. # 7, Ex. 3 at 3).  However, since neither party objected to the joinder or the instructions, the OCCA reviewed for plain error and found as follows:

> In Proposition One Johnson argues that the two burglaries were improperly joined and further, that the court should have instructed the jury to keep the offenses separate, each requiring independent proof beyond a reasonable doubt, during guilt phase deliberations. At trial, no objection was raised to joinder or to the jury instructions, so we review this proposition for plain error. The two home burglaries occurred on the same night, in a four block radius. In *Glass v. State*, the Court recognized a four part test to determine the propriety of joinder. The offenses must: 1) be "the same type of offenses"; 2) "occur[] over a relatively short period of time"; 3) occur "in approximately the same location"; and 4) "proof as to each transaction [must] overlap[] so as to evidence a common scheme or plan." Recognizing that joinder of offenses is a tool grounded in judicial economy, this Court in *Smith v. State*, emphasized that "the degree to which the proof of the separately charged offenses overlaps in showing that a series of criminal acts or transactions constitute a common scheme or plan determines whether joinder is proper." Because there was no overlapping proof in the two burglaries, joinder was not appropriate in this case. Where joinder of offenses occurs, a *Smith* instruction admonishing the jury to evaluate each offense separately, demanding independent proof beyond a reasonable doubt, should be given to the jury. Due to the independently supported identifications in each offense, however, this Court will not find plain error.

(Id. at 2-3 (footnotes and citations omitted)). Respondent contends that the issue of improper joinder is a matter of state law, and raises no constitutional issue for habeas corpus review.

The Tenth Circuit reviewed a similar claim of error in <u>Cummings v. Sirmons</u>, 506 F.3d 1211 (10th Cir. 2007), and rejected the claim for the following reasons:

> To obtain federal habeas relief based on his misjoinder claim, Cummings must demonstrate that the OCCA's rejection of the claim was contrary to, or an unreasonable application of, controlling Supreme Court precedent. The controlling Supreme Court case on this issue is <u>United States v. Lane</u>, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). In <u>Lane</u>, the Supreme Court held that "[i]mproper joinder does not, in itself, violate the Constitution." <u>Id.</u> at 446 n.8, 106 S.Ct. 725. "Rather," the Court indicated, "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." <u>Id.</u> Echoing <u>Lane</u>, we have held that, "to obtain [federal] habeas relief" based on a claim of misjoinder, the "petitioner must show the joinder of offenses actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process." <u>Lucero v. Kerby</u>, 133 F.3d 1299, 1314 (10th Cir.1998) (internal quotation marks omitted).

<u>Cummings</u>, 506 F.3d at 1239. Thus, it is Petitioner's burden in this case to convince the Court that his trial was rendered fundamentally unfair by the trial court's joinder of the two counts at his trial. He has failed to do so.

Evidence with respect to each crime was distinct and easily compartmentalized. Mrs. Flackes testified about the burglary at her apartment. <u>See</u> Dkt. # 9-7, Tr. Trans. Vol. II at 239-78. Testimony from Dawnjare Flackes (<u>id.</u> at 279-301), Destini Flackes (<u>id.</u> at 302-15), and Tulsa Police Officer Megan Elias (<u>id.</u> at 318-49) provided additional support for the First Degree Burglary count. Mrs. Lopez testified about the attempted burglary at her apartment (<u>id.</u> at 216-37). Officer Christopher Scott also testified regarding the incident at Mrs. Lopez' apartment (<u>id.</u> at 350-68). Accordingly, the risk of jury confusion was significantly limited. Joinder of the two counts into one trial did not result in prejudice so great as to deny Petitioner his Fifth Amendment right to a fair trial, nor did it constitute deprivation of his due process rights. Additionally, because the evidence for each crime

was so obviously distinct, the trial court's failure to instruct the jury to consider the evidence separately did not deprive Petitioner of a fair trial.

Although the Court does not dispute the potential for prejudice arising from joinder of offenses, Petitioner has not shown actual prejudice to support a conclusion that he was deprived of a fundamentally fair trial. He has failed to demonstrate that the OCCA's ruling was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to habeas corpus relief on his first proposition of error.

### 2. Ineffective assistance of trial counsel (ground 2)

In his second ground of error, Petitioner claims that his trial counsel was constitutionally ineffective because he: (1) failed to cross-examine Mrs. Lopez about an alleged inconsistency in her identification of Petitioner; (2) failed to request a severance of the counts; (3) failed to request an instruction requiring separate consideration of the evidence in Counts I and II; and (4) waived the requirements of Okla. Stat. tit. 22, § 894[2] when the trial court considered two questions from the jury. The OCCA denied relief on his ineffective assistance of trial counsel claims on direct appeal, finding as follows:

> In Proposition II we find that Johnson was not denied effective assistance of counsel. While Johnson does highlight deficiencies in trial counsel's performance,

---

[2] "After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the district attorney and the defendant or his counsel, or after they have been called." See Okla. Stat. tit. 22, § 894.

8

> we cannot conclude that "the deficient performance created errors so serious as to deprive him of a fair trial with reliable results."

(Dkt. # 7, Ex. 3 at 4). Citing Strickland v. Washington, 466 U.S. 668, 694 (1984), the OCCA explained its reasoning further in the following footnote:

> In addition to counsel's failure to seek severance of offenses or a jury instruction relating to the same, counsel failed to cross examine Lopez about a prior inconsistent description of the intruder. During a 911 call, Lopez said the intruder was white, though Johnson is African American. At trial, Lopez stated that she could not determine the ethnicity of the intruder, but could say that he had neither white skin, nor dark or deep skin. Counsel did conduct an otherwise competent cross examination of Lopez, focusing on the limitations to her opportunity to identify the perpetrator.

(Dkt. # 7, Ex. 3 n.7).

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient

9

performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs.

Petitioner first complains that his trial attorney did not cross-examine Mrs. Lopez about the fact that she identified her intruder as a "white male" in her 911 call to the police, but later described him as light skinned and "not very dark." See Dkt. # 9-7, Tr. Trans. Vol. II at 221. However, the police arrested Petitioner within minutes of arriving at Mrs. Lopez' apartment and she immediately identified him as the one who tried to get into her apartment. She testified at trial that she was "a hundred percent" certain of her identification because she "saw him very close" and "could recognize him." Id. at 226. In light of her certainty in the identification of Petitioner, and her subsequent description of him as "light skinned," it is unlikely that further cross-examination of Mrs. Lopez would have impeached her identification to the extent that the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

As to his claims that his counsel did not object to the joinder of counts and did not seek an instruction advising the jury to consider the evidence for the two counts separately, this Court has already concluded in section B.1 above that Petitioner's trial was not rendered fundamentally unfair

by these failings. Petitioner has not convinced the Court that the results of his trial would have been different if the trial court had severed the two counts or specifically instructed the jury that they must consider the evidence separately before deciding each count.

Lastly, Petitioner contends that his counsel was ineffective for failing to consult with him when waiving the requirements of Okla. Stat. tit. 22, § 894. One note from the jury asked an evidentiary question regarding the timing of the calls to police, and the other asked about the elements of the offense. See Dkt. # 7, Ex. 5 at 28, 30. The court responded to both jury inquiries as follows, "You have all the law and evidence to render your decision." Id. at 29, 31. Although the record provided to this Court does not indicate whether or not the jury was brought into the courtroom, as required under § 894, both Respondent and Petitioner appear to agree that the jury was not summoned to the courtroom. It is unclear whether the attorneys were present when the notes were presented to the trial judge. However, immediately prior to the jury returning to the courtroom with its verdict, the following colloquy occurred:

> JUDGE: We have received word that our jurors have reached a verdict. Before we bring in the jury, there were two notes that came out during deliberation. The Court consulted each side in the handling of both of those notes at the time prior to answering them, then the Court sent in the answer in writing. Those written notes will become a part of the permanent record.
>
> For the purpose of the record, Ms. Fulton, on behalf of the state, did you object to how the Court responded on either note?
>
> FULTON: No, Your Honor.
>
> JUDGE: Ms. Webb, on behalf [of] the defendant, did you object to how the Court responded on either note?
>
> WEBB: No, Your Honor.

11

(Dkt. # 9-7, Tr. Trans. Vol. II at 429). Petitioner has not shown how he was prejudiced by the attorney's failure to include him in discussions with the trial judge regarding the notes, or the trial court's failure, if any, to bring the jury into the courtroom to address its questions. He has not satisfied the prejudice requirement of Strickland to show a reasonable probability that, but for counsel's alleged unprofessional error, the result of his trial would have been different. Strickland, 466 U.S. at 694.

In summary, Petitioner has failed to present any argument or authority to convince the Court that the OCCA's rejection of his ineffective assistance of trial counsel claims was an unreasonable application of Strickland. Having failed to satisfy his burden under AEDPA, the Court finds that Petitioner is not entitled to relief on his ground two claim.

### 3.     Improper admission of evidence (ground 3)

In his third ground, Petitioner contends that his right to a fair trial was violated when the trial court admitted testimonial evidence of Destini Flackes' injuries inflicted by Petitioner after he broke into the Flackes apartment. More specifically, Petitioner complains that Destini Flackes' testimony offered during the punishment stage of trial was irrelevant, and was offered solely to garner the sympathy of the jury. The OCCA found that "the erroneously admitted evidence relating to the hospitalization of a witness days after the burglary was not prejudicial because prejudice would have resulted in an aggravated sentence and Johnson received the minimum sentence for each offense." See Dkt. # 7, Ex. 3 at 4. Respondent argues that this issue concerns a matter of state law and is not properly before the Court in this habeas corpus proceeding. See Dkt. # 7 at 17.

In this ground, Petitioner challenges the state court's evidentiary ruling allowing admission of testimony relating to Destini Flackes' injuries. After the trial judge instructed the jury that the

testimony was "only relevant to possibly sentencing," the prosecutor elicited the following answers from Miss Flackes:

> Q: Did you go to the doctor after this [incident on January 20, 2008]?
>
> A: Yes, I went to the hospital.
>
> Q: What hospital did you go to?
>
> ` A: Saint Francis.
>
> Q: And why did you go to the hospital?
>
> A: My throat, like, was irritating me, like I had a sore throat, and my tonsils had, like almost swollen shut, together, to where it was cutting off circulation where I couldn't breathe.
>
> Q: Okay. Did you have to get medical treatment further than just going to the doctor?
>
> A: Yes. I first went to my doctor, OU pediatrics, and they noticed that it was swelling to where it was cutting off circulation and my oxygen level was down, so they are the one[s who] referred me that same day to the hospital. And while I was in the hospital, I had to stay a week, and they said my esophagus was bruised.

See Dkt. # 9-7, Tr. Trans. Vol. II at 308-09.

Because Petitioner's ground three claim alleges an error of state law, it is not cognizable in this federal habeas corpus proceeding. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). However, to the extent the claim may implicate Petitioner's constitutional rights, the Court finds that he has failed to demonstrate that his trial was rendered fundamentally unfair by the admission of the challenged testimony. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (holding that habeas corpus relief cannot be provided on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results" (quoting Mayes v. Gibson,

210 F.3d 1284, 1293 (10th Cir. 2000))). The category of infractions which violate fundamental fairness is very narrow, and Petitioner's claims fall outside that category. See Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002). Petitioner may obtain habeas relief for an improper state evidentiary ruling only "if the alleged error was so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002) (alteration in original; quotation marks and citation omitted).

In this case, the jury recommended the minimum sentence for each of Petitioner's convictions. Thus, it is clear that Petitioner was not prejudiced by Destini Flackes' allegedly improper testimony. Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair by the testimony concerning the injuries and hospitalization of Destini Flackes.

The Court finds that Petitioner's ground three claim is not cognizable in this federal habeas corpus proceeding, and Petitioner has not shown that his trial was rendered fundamentally unfair. Accordingly, habeas corpus relief shall be denied on ground three.

### 4. Cumulative error (ground 4)

Next, Petitioner argues that the combined effect of the errors deprived him of a fair trial. See Dkt. # 2 at 22-23. On direct appeal, the OCCA concluded that "the cumulative effect of the non prejudicial errors is not such that will cause this Court to disturb the verdict." See Dkt. # 7, Ex. 3 at 4.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000)

14

(quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). In this case, the Court did not find two or more constitutional errors. See Matthews v. Workman, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009) ("In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." (quotation omitted)). As a result, there is no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

### 5.    Ineffective assistance of appellate counsel (grounds 5 and 6)

As his last two grounds, Petitioner raises claims of ineffective assistance of appellate counsel. In ground five, Petitioner contends that his appellate counsel had a conflict of interest and attempted to persuade Petitioner that he had no meritorious direct appeal issues. See Dkt. # 2 at 23. In ground six, he claims appellate counsel refused to include a prosecutorial misconduct claim on direct appeal, also due to a conflict of interest. Id. at 25.  He presented these claims to the OCCA on direct appeal in a *pro se* supplemental brief. See Dkt. # 7, Ex. 8. The OCCA addressed the merits of these issues, and denied relief. See Dkt. # 7, Ex. 3 at 4-5.

In evaluating a claim of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel.

15

See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995), *abrogated on other grounds by* Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Harrington, 185 F.3d 1146, 1152 (10th Cir. 1999). "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citation and footnote omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citation omitted).

Petitioner claims in ground five that his appellate counsel had a conflict of interest and was reluctant to file a direct appeal. See Dkt. # 2 at 24. He contends that counsel omitted "dead-bang winner" issues. Id. However, Petitioner fails to provide any details regarding the alleged "conflict of interest," and fails to identify what omitted claims he believes are "dead-bang winners." The record reflects that appellate counsel filed a lengthy, well written direct appeal brief, raising four (4) claims of error, including claims of ineffective assistance of trial counsel. See Dkt. # 7, Ex. 1. Further, the correspondence between Petitioner and appellate counsel prior to the filing of the direct appeal brief reveals extraordinary efforts by counsel to accommodate Petitioner's requests regarding the appeal and to explain the law and realities of the appeal process to Petitioner. See Dkt. # 7, Ex. 5 at 3-27, 34-42, 52-57; see also Dkt. # 7, Ex. 6. Although Petitioner makes a conclusory argument

16

that appellate counsel's representation was deficient, he provides no detail to support an argument that the alleged deficiency was prejudicial. Petitioner has completely failed to demonstrate how the OCCA's rejection of the ground five ineffective assistance of appellate counsel claim was an unreasonable application of Strickland, or was based on an unreasonable determination of the facts.

Petitioner is more specific in his ground six complaint in which he alleges that appellate counsel refused to include on direct appeal a proposition of prosecutorial misconduct. He argues that the prosecutor coached witnesses to "elicit perjured and exactly matching trial testimony." See Dkt. # 2 at 25. Specifically, he argues that the prosecutor elicited "exactly matching" testimony from both Mrs. Flackes and Mrs. Lopez that they were certain of their identification of Petitioner "a hundred percent." Id. As noted by Respondent, Petitioner provides nothing in support of this claim other than his bare allegation that the prosecutor coached these witnesses to falsely identify Petitioner at trial. See Dkt. # 7 at 22. Significantly, both witnesses immediately identified Petitioner as their intruder the same night of the incidents - well before the prosecutor became involved in representing the State in prosecuting Petitioner. There is no factual basis for Petitioner's claim of prosecutorial misconduct. Thus, appellate counsel was not ineffective for failing to raise the issue on direct appeal. Smith v. Robbins, 528 U.S. 259, 288 (2000) (citing Jones v. Barnes, 463 U.S. 745 (1983) (finding that appellate counsel need not, and should not, raise every nonfrivolous claim)). Petitioner has failed to demonstrate that the OCCA's decision on this issue was an unreasonable application of Supreme Court law. He is not entitled to relief on his ground five or ground six claims.

17

**C.    Motion for appointment of counsel**

Upon review of Petitioner's motion for appointment of counsel, the Court concludes the motion should be denied. Nothing in the motion persuades the Court that counsel is necessary. There is no constitutional right to counsel beyond the direct appeal of a conviction. See Swazo v. Wyoming Department of Corrections, 23 F.3d 332 (10th Cir. 1994). Therefore, Petitioner's motion for appointment of counsel shall be denied.

**D.    Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of

reason.  See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004).  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.  A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States.  His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

2. Petitioner's motion for appointment of counsel (Dkt. # 20) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate Judgment shall be entered in this case.

DATED THIS 25th day of April, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT